IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CASE NO. 4:10CR36 |
| v. | § | |
| | § | |
| ARTHUR JAMES PIERRE (32) | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE REGARDING DEFENDANT'S MOTION TO SUPPRESS AND PARAGRAPH 5 OF DEFENDANT'S MOTION IN LIMINE**

The Court has considered Defendant's Motion to Suppress Testimony Pertaining to a Canine Alert at Defendant Arthur Pierre's Residence at the Time of His Arrest (Dkt. 520) and Paragraph 5 of Defendant's First Motion in Limine (Dkt. 381), the matters having been referred to the undersigned by the Honorable Richard A. Schell (*see* Dkts. 523 & 542). After considering the evidence and the arguments of counsel presented at the April 5, 2012 hearing, the Court finds that Defendant's Motion to Suppress Testimony Pertaining to a Canine Alert at Defendant Arthur Pierre's Residence at the Time of His Arrest (Dkt. 520) should be DENIED and that Paragraph 5 of Defendant's Motion in Limine (Dkt. 381) should be GRANTED.

Defendant Arthur James Pierre is an alleged participant in the distribution of cocaine and marijuana. In his motion to suppress, Defendant seeks suppression of evidence that a dog alerted to a dresser in his bedroom during a search of his residence on July 1, 2010. Apparently, no drugs were found as a result of the alert. Defendant argues that, because the Government chose not to conduct a chemical analysis of the area where the dog alerted, there is no way for the Government

1

to know what substance the canine alerted to or to prove it was not a false positive. Defendant also argues that the dog's training records do not establish that he was a well trained dog in the area of drug detection. Defendant also argues that any evidence of the dog alert is not relevant to any issue at trial and that any probative value it may have is substantially outweighed by its prejudicial value.

In response, the Government contends that Defendant consented to the search of his home and that law enforcement proceeded with the use of a narcotics sniffing dog who was trained to detect marijuana, cocaine and methamphetamines. The Government concedes that no narcotics were found as a result of the canine alert but does state in its response that it intends to introduce testimony about the alert as substantive evidence that Defendant was in possession of controlled substances. *See* Dkt. 534 at 4. The Government further argues that a positive alert by a narcotics detection canine at a location closely associated with a defendant is relevant and admissible at trial when a defendant is charged with a drug related offense.

Defendant's motion to suppress and motion in limine, both seeking exclusion of evidence of the canine alert, are now before the Court.

### EVIDENCE PRESENTED

At the April 5, 2012 hearing, the Government called Officer George Dominguez, the handler of Bartje, the canine who conducted the search of Defendant's home in this case. Bartje and Officer Dominguez were trained and certified together in 2006 at Legends Canine, and worked together from 2006-2011. According to Dominguez and the documents offered, Bartje was certified and re-certified yearly in detecting marijuana, cocaine and methamphetamine, and Bartje had worked with another law enforcement officer prior to his assignment to Dominguez

Dominguez testified that, while they worked together and prior to Bartje's death, he regularly drilled Bartje on training exercises, at least a few times a week for at least few minutes at a time or longer. Dominguez testified that Bartje's training involved some distractions, including other dogs barking and ambient noise.

At the hearing, the Government offered various exhibits and logs reflecting Bartje's training and performance. Although the Government produced training logs from 2006 until 2008, Dominguez testified that he inadvertently destroyed training logs for the time period after 2008 when he re-formatted his hardrive. The report from the search of Defendant's home is one of the reports that was apparently destroyed.

Dominguez testified that Bartje was trained to alert to the *odor* of the controlled substance even if the substance is no longer present. According to Dominguez, Bartje once alerted to an odor of substance on $1.5 million wrapped in plastic which was later lab tested and confirmed for cocaine. He also alerted to currency on an other occasion which was later lab tested and confirmed for methamphetamine. Here, no lab tests were conducted on the dresser.

Dominguez testified that Bartje was an "extremely reliable dog" and very consistent in his reactions. According to Dominguez, Bartje's final alert was to scratch but his initial detection was consistent and involved a head shot in the direction of the scent, squaring his body to the area, a change breathing, and then finally a scratch.

As to the search of Defendant's home, Dominguez testified that, after consent was given, he and Bartje conducted a complete walkthrough of Defendant's house. Bartje alerted to a dresser in the master bedroom, gave headshot, changed breathing and gave a final scratch. Dominguez

conceded that he cannot tell what drug Bartje alerted to in Defendant's home.

In response to Defendant's contention that there is no way of knowing whether Bartje alerted to a common cutting agent for drugs (such as baking soda or talcum powder) rather than a drug itself, Dominguez testified that he has never had a dog alert to just a cutting agent alone and that his training exercises with Bartje took place in areas where those cutting agents were and Bartje did not alert to them.

The Government also called Wendell Nope. From 1980 until the present, Nope has been involved in handling training, evaluating and certifying service dogs. Defendant did not object to Nope's qualifications to testify as an expert in the area of canine searches.

Nope testified that he evaluated the records available for Bartje and discovered that Bartje was successful on 105 of 106 searches (from 2006-2008). According to Nope, based on his experience, this was an extremely high success rate. Nope also testified that Bartje's records showed that there were no false indications among the 106 searches recorded. Nope testified that, if Bartje had reliability problems, such problems would have been evident from his records.

Nope's opinion is that Bartje was trained in a reliable and competent manner to detect the odor of drugs and that his training appeared to be reasonable and sufficient. Nope testified that Bartje was a veteran drug dog and that his certifications show a consistent level of performance and reliability. Of particular importance to Nope was that Bartje was examined and re-certified 30 days after the search of Defendant's residence. Nope testified that it was unlikely that Bartje would have been re-certified in 2010 if his level of reliability had decreased.

According to Nope, there was no evidence in Bartje's records to indicate that his handler may have cued him to alert. Also of importance to Nope was Dominguez's description of how he worked with Bartje and that he let the dog work on his own. Nope testified that, because the dog was allowed to work on his own and "to follow his nose," he believes that his reliability was high. Nope conceded that there was no evidence of diversion training – a form of training used where other odors are placed for dogs to false indicate on (currency, food, sterile toy, animal odor, etc.) – in Bartje's records.

Nonetheless, Nope opined that, based on Dominguez's testimony and the records he was given to review, Bartje was reliable on the day he alerted in Defendant's home.

Defendant called Stephen Nicely, another canine search expert. Nicely opined that the certifications for Bartje were not enough to establish his reliability and that the certification criteria established for Bartje by Legends Canine were invalid. Of particular concern to Nicely is that none of the records indicated any diversion training or negative control testing.

Nicely agreed that the records provided indicate an above-average level of accuracy. However, rather than concluding that this could be attributed to Bartje's skill, Nicely opined that it may be a result of simplistic training and testing. Nicely testified that, if a dog reacts to odor when no drugs are found, one cannot say with absolute certainty that drugs were present.

Both experts have testified in matters involving canine searches before, and their opponents both offered cases in which their expert opinions were disregarded. The Court finds such matters of little import to its analysis here.

## ANALYSIS

Here, Defendant seeks suppression of testimony regarding Bartje's alert on the dresser in his home.[1] It is without question that the positive alert of a properly trained drug detecting dog, standing alone, provides probable cause to support a search and seizure. *U.S. v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003). *See also U.S. v. Campos*, 237 Fed. Appx. 949, 954 (5th Cir. 2007); *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007); *United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995). In *U.S. v. Sanchez-Pena*, the Fifth Circuit noted that a showing of a dog's training and reliability is generally not required if probable cause is developed on site as a result of a dog sniff of a vehicle but that a defendant may nonetheless challenge the reliability of a drug-detecting dog under. *U.S. v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003). In attempting to reconcile the Fifth Circuit's holdings regarding a defendant's ability to challenge the reliability of a canine search, the Western District Court of Texas held:

---

[1]The Court notes that Defendant has challenged the introduction of the evidence of the canine alert through three different motions: a Daubert motion, a motion in limine and this motion to suppress. As this Court has previously noted, the Fifth Circuit has stated that, "a *Daubert* hearing is the wrong procedural tool to challenge the reliability of a drug detection dog." *U.S. v. Three Hundred Sixty-Nine Thousand Nine Hundred Eighty Dollars ($369,980) in U.S. Currency*, 214 Fed. Appx. 432, 435, 2007 WL 143240, 3 (5th Cir. 2007); *see also U.S. v. Outlaw*, 134 F. Supp.2d 807, 810 (W.D. Tex. 2001). *See* Dkt. 504. Because the Fifth Circuit has made this express statement, the Court declined to conduct a *Daubert* analysis as originally requested by Defendant (and ultimately denied by this Court), although factually this case – involving the requested exclusion of essentially a *lack* of physical evidence – does appear to be one of first impression in this Circuit. In *U.S. v. Outlaw*, 134 F. Supp.2d 807, 810 (W.D. Tex. 2001), after rejecting Defendant's challenges to a canine alert based on *Daubert*, the District Court instead turned to directly to whether the reliability of the canine inspection at issue. Without any express guidance to the contrary by the Fifth Circuit, the Court will adopt the *Outlaw* court's approach herein.

> Accordingly, the Court finds that the government need only prove that the canine unit was trained and certified in order to prove the reliability of the canine alert so as establish probable cause. However, the Defendant may still challenge the reliability of the canine inspection, but he has the burden of showing that in the "totality of the circumstances" the canine alert was unreliable and insufficient to establish probable cause. In effect, the Defendant not only has the right to challenge the reliability of a drug, but he also carries the burden of proving that claim.
>
> ..... [O]nce the government proves that canine inspection team was trained to detect contraband items, the government does not have the additional burden of producing field work records or detailed training records in order to establish the reliability of the canine alert. The defendant may, however, still challenge the reliability of the canine inspection with evidence showing unreliability. Whether a canine inspection team is sufficiently trained and reliable to establish probable cause is left to the sound discretion of the trial judge.

*U.S. v. Outlaw*, 134 F. Supp.2d 807, 812, 814 (W.D. Tex. 2001). The Court finds Judge Ferguson's analysis here to be well-reasoned and, to the extent applicable to the facts here, will thus apply his approach to Defendant's arguments. Accordingly, the Court will determine whether Bartje was sufficiently trained and reliable to determine whether any testimony about his alert should suppressed. *See U.S. v. Wilkerson*, 405 Fed. Appx. 893, 896 (5th Cir. 2010) ("Where the evidence indicates that a drug dog has been properly trained and certified, this court has found the record to support the district court's finding that the dog's alert was reliable and established probable cause for a search of the vehicle.").

In determining reliability, the Court looks to a variety of factors. In finding that the canine inspection was reliable, the *Outlaw* court considered the training of the dog and the training of the handler, the testing and certification of the dog and handler, and the areas of certification of the dog and handler (i.e. what substances or materials the dog was trained and certified to detect). The court

also considered, but ultimately was not persuaded by, factors including: training procedures, the minimum quantity of drugs the dog was trained to detect, the distractions used during certification and training searches, whether controlled testing was conducted during training that would indicate the number of false positives the dog made during training, whether any field records had been maintained that would show instances of false alerts and success and failure rates for the canine. Similarly, although in dicta in *Sanchez-Pena*, the Fifth Circuit identified factors such as the certifications of the dog and handler, how long licensed, and whether the handler had previously testified as an expert in canine handling in determining whether the evidence was reliable. *U.S. v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003).

Here, having considered the testimony of all of the witnesses, the Court finds that Bartje was sufficiently trained and reliable. The testimony presented indicated that Bartje was certified and re-certified yearly in detecting marijuana, cocaine and methamphetamine and was regularly drilled by his handler. Although Bartje's training did not involve diversion training, Dominguez testified that he never alerted to cutting agents alone and that he regularly worked in environments with natural distractions, such as noise and people.

Moreover, Dominguez, his handler of at least five years, testified that Bartje was very reliable, had a very consistent manner of alerting to substances and had a very low rate of false alerts. The Government's expert confirmed that the records available for review confirmed a high level of reliability. Although some of Bartje's search and training records are no longer in existence, there was nothing presented to the Court that would suggest that their destruction was intentional or anything but accidental. Indeed, Bartje was examined and re-certified 30 days after the search of

Defendant's residence.

Given his training, more than five years in the field, and record of reliability, the Court finds that evidence of Bartje's alert does not raise Fourth Amendment concerns. *Cf. U.S. v. Outlaw*, 134 F. Supp.2d 807, 813-14 (W.D. Tex. 2001) ("it stretches the bounds of jurisprudential imagination to believe that a positive alert by an untrained dog or by a dog with an extensive history of false positive alerts could be relied upon to establish probable cause without raising Fourth Amendment concerns."). Thus, to the extent Defendant's consent to the search of the house does not otherwise waive any challenges he has, the Court finds that Bartje was sufficiently trained and reliable and the motion to suppress any evidence of the alert under constitutional grounds should therefore be DENIED.

## MOTION IN LIMINE

The Court, having rejected Defendant's efforts at excluding the canine alert through a *Daubert* challenge and a suppression motion, now turns to paragraph 5 of Defendant's motion in limine, seeking exclusion of the "K-9 alert."[2] Defendant argues that any testimony about the dog alert is not relevant and even if it were is unduly prejudicial.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Given the fact that Defendant is charged in a drug distribution conspiracy, Bartje was trained to alert to the presence of drugs, and the Government has indicated that it would offer the

---

[2] Only this paragraph of the voluminous limine motion was referred to the undersigned. The remainder will be determined by the District Judge, unless otherwise referred.

9

testimony about Bartje's alert to support their contention that Defendant had drugs in his home, the Court finds that the evidence of the alert is likely relevant to the claims against Defendant. However, despite its relevance, the Court finds that it should be excluded.

Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Here, the Court finds that any testimony about Bartje's alert on the dresser would confuse the issues and cause Defendant undue prejudice. In this case, the Government must prove that Defendant was involved in the distribution – not merely personal use – of cocaine and marijuana. Based on the testimony presented at the hearing, although Bartje's alert may have been reliable as an indicator that drugs were once present near the dresser, there is nothing about the alert that would show the amount of drugs that once were there, the amount of time that had passed since they were there, or the kind of drugs present. Any probative value Bartje's alert might have is outweighed by the risk that the alert was to an amount or type of drug not a part of the charged conspiracy and for a time period not within the charging indictment. Because the alert cannot define the who, what or when – and because there is no possibility of examining or cross-examining Bartje as to the who, what or when of the alert – any testimony about it would confuse the issues and unduly prejudice Defendant.

Paragraph 5 of Defendant's motion in limine should therefore be GRANTED regarding any statements concerning a K-9 alert at the time of Defendant's arrest.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within the time period set forth above shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 10th day of May, 2012.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE